Kevin W. Kirsch (SBN 166184)
*Email: kkirsch@bakerlaw.com*
**BAKER & HOSTETLER LLP**
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
Telephone: 513-907-8715

Katherine R. McMorrow (SBN 315723)
*Email: kmcmorrow@bakerlaw.com*
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: 310-820-8800

Jeffrey J. Lyons
(*pro hac vice* application forthcoming)
*Email: jjlyons@bakerlaw.com*
**BAKER & HOSTETLER LLP**
1201 North Market Street, Suite 1407
Wilmington, DE 19801
Telephone: 302-407-4222

*Attorneys for Plaintiffs*
RESYSTA NORTH AMERICA, INC.,
RESYSTA INTERNATIONAL GMBH,
and PATENTA ASIA LTD.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

RESYSTA NORTH AMERICA, INC., RESYSTA INTERNATIONAL GMBH, and PATENTA ASIA LTD.,

Plaintiffs,

v.

MICHAEL SLOUP, NOVANO NORTH AMERICA INC., VOSS SOLID USA, INC. d/b/a NOVANO BUILDING PRODUCTS, ZORAIDA MORALES, ALL GREEN BUILDING PRODUCTS, LLC, ARNE ZENNECK, and SUSTAIN BUILT SUPPLY INC.,

Defendants.

Case No.

**COMPLAINT FOR**

**1. Breach of Contract (Consulting Agreement)**

**2. Breach of Contract (Employment Agreement)**

**3. Breach of Contract (Additional Agreement)**

**4. Computer Fraud (18 U.S.C. § 1030 and Cal. Penal Code § 502)**

**5. Cybersquatting (15 U.S.C. § 1125(d))**

**6. Breach of Fiduciary Duty**

**7. Copyright Infringement (17 U.S.C. § 501)**

**8. Trademark Infringement (15 U.S.C. § 1125(a))**

**9. Trademark Infringement (15 U.S.C. § 1114)**

**10. Cal. Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

**11. Cal. Common Law Unfair Competition**

**12. Misappropriation of Trade Secrets (18 U.S.C. §§ 1836 *et seq.*)**

**13. Misappropriation of Trade Secrets (Cal. Civil Code §§ 3426 *et seq.*)**

**14. Breach of Contract (Distributor Agreement)**

**15. Breach of Contract (Distributor Agreement)**

**16. Fraud**

**17. Breach of Contract (Sublease Agreement)**

**18. Breach of Contract (Stockholder Agreement)**

**19. Fraud**

**20. False Advertising (15 U.S.C. § 1125(a))**

**21. Conversion**

**22. Trespass to Chattels**

**23. Intentional Interference with Prospective Economic Advantage**

**24. Negligent Interference with Prospective Economic Advantage**

**25. Breach of the Implied Covenant of Good Faith and Fair Dealing**

**26. Civil Conspiracy**

**DEMAND FOR JURY TRIAL**

Plaintiff Resysta North America, Inc. ("Resysta NA"), Resysta International GmbH ("Resysta GmbH", and, together with Resysta NA, "Resysta"), and Patenta Asia Ltd. ("Patenta") bring this Complaint against Defendants Michael Sloup ("Mr. Sloup"), Novano North America Inc. ("Novano"), Voss Solid USA, Inc. d/b/a Novano Building Products ("Voss Solid USA"), Zoraida Morales ("Ms. Morales"), All Green Building Products, LLC ("All Green"), Arne Zenneck ("Mr. Zenneck"), and Sustain Built Supply Inc. ("Sustain Built"), collectively ("Defendants"), and allege as follows:

## INTRODUCTION

1. Resysta is a leading manufacturer and distributor of premium composite building materials, including the RESYSTA® brand of products in the United States via Resysta NA. Resysta's innovative building materials have the look and feel of natural wood, but are 100% wood free and made with renewable rice husk, offering higher durability and lower maintenance than natural-wood-based building materials. Patenta is a wholly owned subsidiary of Resysta GmbH and the holder of certain intellectual property of Resysta, including certain of its trademarks.

2. In 2011 and 2012, Resysta NA entered into a Consulting Agreement and then an Employment Agreement with Mr. Sloup via which the parties agreed that Mr. Sloup would act as the President of Resysta for a two-year renewable term. In 2016, Resysta GmbH and Mr. Sloup entered into a further agreement, the "Additional Agreement to the Employment Contract of 05.07.2011," which, in relevant part, confirmed that Mr. Sloup was not entitled to "any rights to the technology, products and services used by, developed on behalf of [Resysta GmbH] or to any work results produced by the Managing Director for [Resysta GmbH]" and that any works or intellectual property created by Mr. Sloup pursuant to his services for Resysta would be owned by Resysta.

3. Mr. Sloup was terminated for cause with immediate effect on February 19, 2026. In the months preceding his termination, and thereafter, Mr. Sloup

orchestrated and carried out a plan to destroy the business of Resysta and replace Resysta with a Novano-branded entity selling the exact same products, using the same manufacturer, the same suppliers, and selling to the same customer base, all the while claiming credit for Resysta's past projects and accomplishments. As part of this scheme, Mr. Sloup utilized other companies for which he is an owner and other individuals that are beholden to him, including Voss Solid USA, Ms. Morales, All Green, Arne Zenneck, and Sustain Built.

4. Notwithstanding Mr. Sloup's termination, Mr. Sloup also maintained and continued to use his administrative access to Resysta NA's website, www.resystausa.com, as well as the email addresses relating to that domain. Since his termination, Mr. Sloup has used his administrative access to the Resysta NA website to both access and make unauthorized modifications to the website and route client emails to himself rather than Resysta NA. Upon information and belief, Mr. Sloup's modifications appear designed to disrupt Resysta NA's business operations, its financial position, and harm its reputation to the benefit of Mr. Sloup, Novano, and the other associated companies and individuals. Demonstrating Mr. Sloup's bad faith, Novano was founded by Mr. Sloup *during his tenure as President of Resysta NA*, and Mr. Sloup used the knowledge, know-how, and intellectual property of Resysta to assist in the formation and operation of Novano to the detriment of Resysta.

5. Despite multiple demands, Mr. Sloup—individually and/or on behalf of his various entities—refused to relinquish control over the Resysta NA domain and website, and only recently was Resysta NA able to gain control over the domain. Resysta seeks the Court's intervention to prevent Mr. Sloup and the various entities and individuals under his control from further unlawful infliction of irreparable damage to Resysta.

6. Mr. Sloup has misappropriated Resysta's intellectual property, know-how, customer lists, and other business information for his and Novano's benefit, breached his contracts with Resysta, and violated his fiduciary duties to Resysta.

7. Resysta brings this action not only to recover for the damage the Defendants have already inflicted, but to once and for all end Mr. Sloup's hijacking of Resysta's business, intellectual property, trade secrets, domains, websites, and email accounts, among other things. Despite multiple demands, Defendants would not relinquish control over the Resysta NA domain, and only recently was Resysta NA able to gain control over the domain.

8. Resysta also brings this action to stop Mr. Sloup's fraudulent attempt to destroy Resysta NA's business. Mr. Sloup has created a network of companies under his ownership—including Voss Solid USA, All Green, and Sustain Built, with the cooperation of his associates, including Mr. Zenneck—to facilitate interested-party transactions on behalf of Resysta NA during his tenure and, later, after his firing, a campaign of illusion and deceit against Resysta NA in an attempt to hurt its business operations and usurp its role in the United States market to benefit of himself and his co-conspirators.

## PARTIES AND JURISDICTION

9. Resysta NA is a Delaware corporation with a principal place of business at 4035 Cheyenne Court, Chino, CA 91710.

10. Resysta GmbH is a German limited liability company and is the sole stockholder of Resysta NA.

11. Patenta is a Chinese private limited liability company.

12. Mr. Sloup is an individual. He is listed as the agent for Novano at 4035 Cheyenne Court, Chino, CA 91710. On information and belief, his last known residence is 15337 Cinnabar Court, Chino Hills, CA 91709.

13. Novano is a California corporation with a principal place of business at 4035 Cheyenne Court, Chino, CA 91710.

14. Voss Solid USA d/b/a Novano Building Products is a General Corporation residing at 4035 Cheyenne Court, Chino, CA 91710.

15. Ms. Morales is an individual. On information and belief, her last known residence is 13574 Martinique Drive, Chino Hills, CA 91709.

16. All Green is a California Limited Liability Company with a principal place of business at 4035 Cheyenne Court, Chino, CA 91710.

17. Mr. Zenneck is an individual. Upon information and belief, his last known address is 7006 38th Avenue, Seattle, WA, 98115.

18. Sustain Built is a Washington corporation with a principal place of business at 14219 Smokey Point Blvd., Building 2B, Marysville, WA 98271. Mr. Zenneck is the registered agent for Sustain Built.

19. The Court has original subject matter jurisdiction over all claims arising under federal law pursuant to 28 U.S.C. § 1331. The Court has subject matter jurisdiction over those claims arising under state law pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the federal law claims.

20. The Court has personal jurisdiction over Mr. Sloup because he has committed the wrongful acts complained of and caused injury to Resysta within California, and because he resides in Chino, California.

21. The Court has personal jurisdiction over Novano because it has committed the wrongful acts complained of and caused injury to Resysta within California, and because Novano is a California corporation.

22. The Court has personal jurisdiction over Voss Solid USA because it has committed the wrongful acts complained of and caused injury to Resysta within California, and because Voss Solid USA is a California business entity.

23. The Court has personal jurisdiction over Ms. Morales because she has committed the wrongful acts complained of and caused injury to Resysta within California, and because she resides in Chino Hills, California.

24. The Court has personal jurisdiction over All Green because it has committed the wrongful acts complained of and caused injury to Resysta within California, and because All Green is a California business entity.

25. The Court has personal jurisdiction over Mr. Zenneck because he has committed the wrongful acts complained of and caused injury to Resysta within California, and entered into agreements and conducted business with entities in California.

26. The Court has personal jurisdiction over Sustain Built because it has committed the wrongful acts complained of and caused injury to Resysta within California.

27. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to this action occurred in this district.

## FACTUAL BACKGROUND

28. Resysta was founded in 2010 and since 2011 has manufactured and distributed premium composite building materials, including the Resysta® brand of products, around the globe, including in the United States via Resysta NA.

29. Resysta's building products utilize a proprietary composite formula with agricultural waste, specifically rice husks, to create a durable and low maintenance building material as compared to traditional wood-based materials.

30. Resysta has invested substantial resources in protecting its proprietary compositions, both through trade secrets and patents, and maintains a robust global patent portfolio covering its innovations.

31. On July 5, 2011, Resysta NA and Mr. Sloup entered into the "Consulting Agreement." *See* Ex. A.

32. Pursuant to the Consulting Agreement, Mr. Sloup was to act as President of Resysta NA in exchange for compensation and the ability to become a full-time employee of Resysta NA.

33. In relevant part, Mr. Sloup (therein, the "Consultant") agreed to irrevocably assign all intellectual property ("IP") and other rights to Resysta during the term of his contract:

> Consultant hereby irrevocably assigns, grants and conveys to Company all right, title and interest now existing or that may exist in the future in and to any document, development, work product, know-how, design, processes, invention, technique, trade secret, or idea, and all intellectual property rights related thereto, that is created by Consultant and which relates to Consultant's services provided pursuant to this Agreement (the "Work Product"), including all copyrights, trademarks and other intellectual property rights (including, but not limited to, patent rights) relating thereto. Consultant agrees that any and all Work Product shall be and remain the property of Company.

Ex. A ¶ 3.

34. On February 1, 2012, Resysta NA and Mr. Sloup entered into the "Employment Agreement." *See* Ex. B.

35. Pursuant to the Employment Agreement, Mr. Sloup was appointed the President of Resysta NA for a term of two years, with the option of extensions of that term unless terminated.

36. In relevant part, the Employment Agreement specified that all relevant documents, including "designs, drawings, formula, … price lists, lists of customers and suppliers … shall … be deemed to be the property of [Resysta] and shall, together with all other documents, papers and property in the possession or under the control of [Mr. Sloup] and belonging to the Group,[1] be delivered up by [Mr. Sloup] to [Resysta] immediately upon the termination (or expiration) of the

[1] "The Group" is defined as "the Company and any Associated Company and any holding company of any associated Company and any subsidiary of such holding company or of the Company[.]"

Employment (or at any earlier time on demand) and [Mr. Sloup] shall not without the prior written consent of [Resysta] retain any copy or copies thereof." Ex. B ¶ 10(2).

37. On September 23, 2016, Resysta GmbH and Mr. Sloup entered into the "Additional Agreement to the Employment Contract of 05.07.2011" (the "Additional Agreement"). *See* Ex. C.

38. The Additional Agreement was between Resysta GmbH and Mr. Sloup rather than Resysta NA and Mr. Sloup because Resysta GmbH agreed to sponsor Mr. Sloup's United States visa, which Mr. Sloup subsequently also used for the benefit of his other business ventures.

39. The Additional Agreement, among other things, confirmed that Mr. Sloup was "not … entitled to any rights to the technology, products and services used by, developed on behalf of [Resysta] or to any work results produced by the Managing Director for [Resysta]." *See* Ex. C ¶ 1.1.

40. The Additional Agreement further confirmed that "Any IP Rights of [Mr. Sloup] with respect to the aforesaid technology, products, services or work results shall hereby, to the extent that this has not been effected in the past, be assigned to [Resysta] and to the extent allowed by applicable law." *Id.*

41. Mr. Sloup's tenure as President of Resysta NA demonstrated a pattern of lack of care, indifference, and indeed even open hostility to Resysta NA.

42. For example, Mr. Sloup allowed Resysta NA's commercial general liability ("CGL") insurance policy to lapse from mid-October 2021 through January 2023, leaving Resysta NA exposed on warranty and product liability claims during that time.

43. Moreover, upon information and belief, Mr. Sloup owns 60% of All Green and Zoraida Morales owns the other 40%, and both, either individually or on behalf of All Green, have engaged in self-dealing with respect to the space leased by All Green to Resysta NA during Mr. Sloup's tenure as President of Resysta NA.

44. Ms. Morales is an active participant in All Green's business, and is its CEO.

45. Mr. Sloup signed the sublease for the Resysta NA space at 4035 Cheyenne Court, Chino, CA 91710 (the "4035 Cheyenne Court Property") on behalf of Resysta NA. *See* Ex. D.

46. Upon information and belief, Mr. Sloup is also an owner of ZOMI Real Estate, LLC, which appears to be the ultimate owner of the 4035 Cheyenne Court Property. *See* Ex. E.

47. Ms. Morales signed the lease between ZOMI Real Estate, LLC, and All Green on behalf of both parties.

48. Upon information and belief, the rent paid by Resysta NA to All Green under the sublease increased from $1,878.34 per month in 2016 to $5,100 per month as of January 2025. Mr. Sloup approved each of those increases on behalf of both All Green and Resysta NA.

49. Upon information and belief, no independent evaluation of fair market rent was conducted, no Resysta NA board approval was sought or obtained to agree to those rent increases, nor was any disinterested party retained to review or approve any of the increases.

50. Mr. Sloup entered into the sublease with All Green in direct violation of the Stockholder Agreement of Resysta North America, Inc. (the "Stockholder Agreement") (*see* Ex. F), which required approval before entering into related-party transactions of this nature. Upon information and belief, Mr. Sloup did not seek or obtain such approval under the Stockholder Agreement.

51. Pursuant to Section 5.1(b) of the Stockholder Agreement, Resysta NA is prohibited from undertaking certain actions without the prior written consent of the majority stockholder, Resysta GmbH. Mr. Sloup's execution of the sublease violated at least the following provisions of the Stockholder Agreement, each of which independently required Resysta GmbH approval: (i) Section 5.1(b)(xii),

which requires approval for the conclusion of agreements with the Company's shareholders or affiliated persons or entities; (ii) Section 5.1(b)(xv)(6), which requires approval for entering into lease or tenancy agreements having a term of more than two years; (iii) Section 5.1(b)(xix), which requires approval for entering into agreements with shareholders or entities in which a shareholder holds an interest, directly or indirectly; (iv) Section 5.1(b)(xxiv), which requires approval for any transactions outside the ordinary course of business having an impact of more than $50,000 per annum; and (v) Section 5.1(b)(xiii), which requires approval for granting benefits to the Company's shareholders or affiliated persons or entities.

52. The Stockholder Agreement was entered into on July 29, 2011, between Resysta NA, Resysta GmbH and Masz Holding Limited ("Masz"), a Hong Kong limited company, along with Mr. Sloup and Mr. Zenneck as the "only members, owners and stockholders of" Masz. Resysta GmbH was described in the agreement as the "Majority Shareholder" of Resysta NA, and Masz was the "Minority shareholder."

53. As explained in the Stockholder Agreement, both Mr. Sloup and Mr. Zenneck were the only owners, members, and stockholders of Masz. *See* Ex. F at p.1.

54. Upon information and belief, Masz was dissolved in March of 2021 and the shares of Resysta NA held by Masz were distributed to Mr. Sloup and Mr. Zenneck without notice to Resysta GmbH or Resysta NA. As for Mr. Sloup's shares, they were, upon information and belief, then transferred to JS Holdings UG, Germany, a corporation owned and controlled by Mr. Sloup.

55. Mr. Sloup concealed the dissolution of Masz from Resysta, and continued to sign documents on behalf of Masz through 2025, well after its apparent dissolution.

56. The transfer of Masz's shares constituted various breaches of the Stockholder Agreement, including at least Section 3.1 (prohibiting transfers of

Resysta NA shares), various parts of Section 4 (regarding providing notice and a right of first refusal), Section 8.1 (relating to the unauthorized transfer of ownership of Masz), and Section 8.2 (regarding Masz's status and standing as an operating company).

57. Upon information and belief, Mr. Sloup is also an owner of Voss Solid USA and has engaged in self-dealing with respect to the business of Voss Solid USA during Mr. Sloup's tenure with Resysta NA.

58. Upon information and belief, prior to the formation of Novano, Mr. Sloup did business as Novano Building Products through Voss Solid USA from approximately March of 2025 through at least the formation of Novano, during which Mr. Sloup orchestrated and carried out his plan to destroy the business of Resysta and replace Resysta with a Novano-branded entity selling the exact same products, using the same manufacturer, the same suppliers and selling to the same customer base, all the while claiming credit for Resysta's past projects and accomplishments.

59. Upon information and belief, Novano was founded by Mr. Sloup during his tenure as President of Resysta NA.

60. Upon information and belief, Mr. Sloup is also a long-time business partner of Mr. Zenneck. Mr. Zenneck is an owner of Sustain Built, which was a client of Resysta NA during Mr. Sloup's tenure as Resysta NA's President. Sustain Built ordered Resysta® products from Resysta NA during Mr. Sloup's tenure as Resysta NA's President.

61. Since Mr. Sloup's termination from Resysta NA, Sustain Built, and Mr. Zenneck individually, have ceased all payments to Resysta NA, including for large past-due invoices. Moreover, on February 23, 2026, Sustain Built purported to cancel the Distributor Agreement (the "Distributor Agreement – Sustain Built"), dated July 3, 2011, with Resysta NA. *See* Ex. G. That immediate termination was

in violation of at least Section 8(1), which provides for a notice period of six-months to terminate the contract. *See* Ex. G § 8(1).

62. Upon information and belief, Mr. Sloup is the majority owner of All Green, which was itself a client of Resysta NA during Mr. Sloup's tenure as Resysta NA's President. All Green ordered Resysta® products from Resysta NA during Mr. Sloup's tenure as Resysta NA's President under a Distributor Agreement (the "Distributor Agreement – All Green"). *See* Ex. H.

63. Since Mr. Sloup's termination from Resysta NA, All Green has ceased all payments to Resysta NA, including for large past-due invoices.

64. Since Mr. Sloup's termination from Resysta NA, All Green has endeavored to distribute "Competing Goods" as defined in the Distributor Agreement, i.e. Novano's copycat products. *See* Ex. H § 6(1).

65. Upon information and belief, during his tenure as President of Resysta NA, Mr. Sloup used the knowledge, know-how, business information, trade secrets, and intellectual property of Resysta in the formation of Novano.

66. Indeed, in an email dated November 14, 2025, Mr. Sloup was discussing future plans for Resysta NA (as its then-President), including creating "a new company, Novano USA, owned by" Mr. Sloup, that would purchase "compatible products" from Resysta NA's manufacturer (Wundaplast) and "inform distributors directly (by phone) that [Resysta NA] cannot currently accept orders and that future orders should be placed with Novano to ensure continuity." That same email indicated that Mr. Sloup intended to follow that plan, and indeed, Mr. Sloup did create the Novano entity and attempt to steal the business away from Resysta NA.

67. Around the same time as the November 14, 2025, email, Mr. Sloup visited the Wundaplast factory in Malaysia, and flew out a team of marketing professionals from the Philippines to join him , which Mr. Sloup paid for using Resysta NA funds.

68. Upon information and belief, Mr. Sloup used the intellectual property and confidential and trade secret know-how, customer lists, price lists, and sensitive business information of Resysta NA to assist Novano and Mr. Sloup's other related business entities in their business operations and in competing with Resysta NA, including during Mr. Sloup's tenure as President of Resysta NA.

69. Upon information and belief, during his tenure as President of Resysta NA, Mr. Sloup used Resysta NA funds to pay for personal items, including overseas trips to visit family and personal subscriptions.

70. Upon information and belief, Mr. Sloup, during his tenure as President of Resysta NA, also misappropriated Resysta's intellectual property, know-how, price lists, customer lists, operating funds, assets, and other trade secrets and sensitive business information for his and Novano's benefit, breached his contracts with Resysta, and violated his fiduciary duties to Resysta NA by creating a competing company based on the illicit information Mr. Sloup obtained through his employment with Resysta.

71. To be sure, Novano is operating an exact copy of Resysta NA's business, including, as discussed below, using the same copyrighted images, trademarks, suppliers, customers, and a knock off of Resysta's proprietary product.

72. Based upon the various breaches of contract and duty, lack of care and loyalty, self-dealing, and open hostility to Resysta NA's business operations, Mr. Sloup was terminated as President of Resysta NA for cause as of February 19, 2026. *See* Ex. I.

73. The Termination Letter reminded Mr. Sloup that he is "obliged, even beyond [his] termination date, to keep strictly confidential all internal company and operational secrets, especially all company procedures relating to Resysta North America, Inc. that came / come to [his] knowledge in the course of [his] work," and requested that he "return all equipment provided to [him] or paid for by Resysta North America, Inc. or any of its affiliates" and "other essential information for

operation of the business," as well as "log in information for all company accounts…company website access details," etc. and "transfer…any ownership of email or other internet domains to the company…." by close of business on February 20, 2026. *Id.* at 1.

74. Mr. Sloup failed to comply with the demands in the Termination Letter and the requirements of his employment agreements. After his termination, Mr. Sloup maintained and used his administrative access to Resysta NA's website, www.resystausa.com, as well as the email addresses relating to that domain, that he obtained during his tenure as President of Resysta NA.

75. Since his termination, Mr. Sloup has used his administrative access to the Resysta NA website to both access and make unauthorized modifications to the website. Upon information and belief, these modifications appear designed to disrupt Resysta NA's business operations, its financial position, and harm its reputation to the benefit of Mr. Sloup and Novano.

76. Moreover, Mr. Sloup has used his access to the Resysta NA website to receive emails to at least the info@resystausa.com email address to the benefit of himself, Novano, and/or the other Sloup-affiliated entities to the detriment of Resysta NA. This includes inbound inquiries regarding samples, pricing, and placing orders, which were redirected to Mr. Sloup and his related businesses and associates, and away from Resysta NA.

77. It was only as of April 1, 2026, that Resysta NA was able to obtain control of the Resysta NA domain (and at least one other related domain, www.resystainfo.com) and exclude Mr. Sloup from access to same, via Resysta NA's own efforts with the domain registrar.

78. After Resysta NA was able to regain control over the domain, Mr. Sloup has sought to and continues to challenge the transfer of the www.resystausa.com website, which is Resysta NA's primary website, even though

he is not an officer of Resysta NA and has no claim to the website or to any of Resysta's intellectual property or other assets.

79. Resysta was never able to obtain access to the website host, however, and Mr. Sloup was able and did continue to make further modifications to the site to the detriment of Resysta. As a result, and to prevent further diversion of customer requests from Resysta to Mr. Sloup and his associated companies and conspirators, Resysta was forced to use its access to the domain to redirect to a different hosting platform and rebuild the website from scratch, losing its search-engine optimization and website rankings.

80. Further, upon information and belief, Mr. Sloup intentionally deleted the entire contents of his Resysta laptop with an "erase" program before returning it to Resysta several days past the deadline stated in his termination letter.

81. To date, Resysta has also been unable to gain access to its social media accounts, which remain under the control of Mr. Sloup.

82. Novano, All Green, and Voss Solid USA all feature the same principal place of business as registered with the California Secretary of State, as well as the same phone number.

83. Upon information and belief, one or more of the Defendants has also registered additional domains that incorporate Resysta's Resysta® trademark in order to unfairly compete with Resysta NA, including, but not limited to, novano-resysta.de and naxan-resysta.com.

84. The Defendants also wholesale copied Resysta's copyrighted photographs, brochures, and trademarks in violation of state and federal law. For example, Novano's https://novanousa.com/ website lists the same products as Resysta, using Resysta product photographs and Resysta job photographs, falsely claiming and advertising that the Resysta projects were completed by Novano, and listing the same vendors and factories as Resysta.

85. Resysta GmbH owns all pertinent rights to its images, including the right to pursue all claims of copyright infringement, injunctive relief, damages, destruction, and recall and information.

86. The Defendants used and continue to use the Resysta images on at least their websites and brochures.

87. For example, the https://novanousa.com/ website includes at least the following images that are copyright of Resysta GmbH and not permitted to be displayed on the Novano website:

| Resysta | Novano |
| --- | --- |
|  https://resystausa.com/products/composite-fence-profile-resfp010608/ |  https://novanobuildingproducts.com/en-us/product/composite-fence-profile/ |
|  https://resystausa.com/products/fence-top-rail-resft3411208/ |  https://novanobuildingproducts.com/en-us/product/composite-fence-top-rail/ |

| Resysta | Novano |
|---|---|
|  https://resystausa.com/products/fence-profile-insert-resfi123408/ |  https://novanobuildingproducts.com/en-us/product/fence-profile-insert/ |
|  https://resystausa.com/products/cladding-1-channel-thick/ |  https://novanobuildingproducts.com/en-us/product/composite-cladding-1-channel-thick/ |

| Resysta | Novano |
|---|---|
|  https://resystausa.com/products/cladding-2-channels/ |  https://novanobuildingproducts.com/en-us/product/composite-cladding-2-channels/ |
|  https://resystausa.com/products/cladding-2-channels-thin/ |  https://novanobuildingproducts.com/en-us/product/composite-cladding-2-channels-thin/ |

| Resysta | Novano |
| --- | --- |
|  https://resystausa.com/products/cladding-1-channel-thick-al/ |  https://novanobuildingproducts.com/en-us/product/composite-cladding-1-channel-thick-aluminum/ |
|  https://resystausa.com/products/cladding-3-channels/ |  https://novanobuildingproducts.com/en-us/product/composite-cladding-3-channels/ |

| Resysta | Novano |
|---|---|
|  https://resystausa.com/products/cladding-2-channels-thick/ |  https://novanobuildingproducts.com/en-us/product/composite-cladding-2-channels-thick/ |
|  https://resystausa.com/products/decking-board/ |  https://novanobuildingproducts.com/en-us/product/composite-decking-board/ |
|  https://resystausa.com/products/decking-board/ |  https://novanobuildingproducts.com/en-us/product/composite-decking-board/ |

| Resysta | Novano |
| --- | --- |
| <br>https://resystausa.com/products/decking-board/ | <br>https://novanobuildingproducts.com/en-us/product/composite-decking-board/ |
| <br>https://resystausa.com/products/decking-board/ | <br>https://novanobuildingproducts.com/en-us/product/composite-decking-board/ |
| <br>https://resystausa.com/products/starter-board/ | <br>https://novanobuildingproducts.com/en-us/product/composite-edge-board/ |

| Resysta | Novano |
|---|---|
|  https://resystausa.com/products/starter-board/ |  https://novanobuildingproducts.com/en-us/product/composite-edge-board/ |
|  https://resystausa.com/products/starter-board/ |  https://novanobuildingproducts.com/en-us/product/composite-edge-board/ |
|  https://resystausa.com/products/starter-board/ |  https://novanobuildingproducts.com/en-us/product/composite-edge-board/ |

| Resysta | Novano |
|---|---|
|  https://resystausa.com/products/cladding-2-channels-thick-al/ |  https://novanobuildingproducts.com/en-us/product/composite-cladding-2-channels-thick-aluminum/ |
|  https://resystausa.com/products/fascia-board/ |  https://novanobuildingproducts.com/en-us/product/composite-fascia-board/ |
|  https://resystausa.com/products/fascia-board/ |  https://novanobuildingproducts.com/en-us/product/composite-fascia-board/ |

| Resysta | Novano |
|---|---|
|  https://resystausa.com/products/fascia-board/ |  https://novanobuildingproducts.com/en-us/product/composite-fascia-board/ |
|  https://resystausa.com/products/fascia-board/ |  https://novanobuildingproducts.com/en-us/product/composite-fascia-board/ |
|  https://resystausa.com/products/cladding-4-channels-thick/ |  https://novanobuildingproducts.com/en-us/product/composite-cladding-4-channels-thick/ |

| Resysta | Novano |
|---|---|
|  https://resystausa.com/products/cladding-4-channels-thick-al/ |  https://novanobuildingproducts.com/en-us/product/composite-cladding-4-channels-thick-aluminum/ |
|  https://resystausa.com/products/dowel/ |  https://novanobuildingproducts.com/en-us/product/dowel/ |
|  https://resystausa.com/products/dowel/ |  https://novanobuildingproducts.com/en-us/product/dowel/ |

| Resysta | Novano |
|---|---|
|  https://resystausa.com/products/dowel/ |  https://novanobuildingproducts.com/en-us/product/dowel/ |
|  https://resystausa.com/products/dowel/ |  https://novanobuildingproducts.com/en-us/product/dowel/ |
|  https://resystausa.com/products/start-end-clip-ss1-2/ |  https://novanobuildingproducts.com/en-us/product/starter-clip/ |

| Resysta | Novano |
| --- | --- |
|   https://resystausa.com/products/decking-clip/ |  https://novanobuildingproducts.com/en-us/product/decking-clip/ |
|  https://resystausa.com/products/cladding-4-channels/ |  https://novanobuildingproducts.com/en-us/product/composite-cladding-4-channels/ |

| Resysta | Novano |
|---|---|
|  https://resystausa.com/products/cladding-7-channels/ |  https://novanobuildingproducts.com/en-us/product/composite-cladding-7-channels/ |
|  https://resystausa.com/products/facade-clip/ |  https://novanobuildingproducts.com/en-us/product/facade-clip/ |

| Resysta | Novano |
|---|---|
|  https://resystausa.com/products/facade-long-clip/ |  https://novanobuildingproducts.com/en-us/product/facade-long-clip/ |
|  https://resystausa.com/products/siding-4-profile-h/ |  https://novanobuildingproducts.com/en-us/product/4-inch-composite-siding-profile/ |

| Resysta | Novano |
|---|---|
|  https://resystausa.com/products/siding-6-profile-h/ |  https://novanobuildingproducts.com/en-us/product/6-inch-composite-siding-profile/ |
|  https://resystausa.com/products/siding-12-profile/ |  https://novanobuildingproducts.com/en-us/product/12-inch-composite-siding-profile/ |

| Resysta | Novano |
| --- | --- |
|  https://resystausa.com/products/6-deko-profile/ |  https://novanobuildingproducts.com/en-us/product/6-inch-deco-composite-siding-profile/ |
|  https://resystausa.com/products/6-lusso-profile/ |  https://novanobuildingproducts.com/en-us/product/6-inch-lusso-composite-siding-profile/ |

| Resysta | Novano |
| --- | --- |
|  https://resystausa.com/products/deco-corner/ |  https://novanobuildingproducts.com/en-us/product/deco-corner/ |
|  https://resystausa.com/products/rhombus-siding-profile/ |  https://novanobuildingproducts.com/en-us/product/rhombus-composite-siding-profile/ |

| Resysta | Novano |
|---|---|
|  |  |
| https://resystausa.com/products/siding-screw/ | https://novanobuildingproducts.com/en-us/product/1-inch-tec-shoulder-siding-screw/ |

88. As further part of his campaign to compete against and harm Resysta, Mr. Sloup has repeatedly made changes to the Resysta NA website long after his termination for cause in an effort to disrupt Resysta NA's business operations, its financial position, and harm its reputation to the benefit of Novano.

89. Moreover, upon information and belief, Mr. Sloup, on behalf of and for Novano, is soliciting Resysta's customers, vendors, and manufacturers, and affirmatively telling them false information about Resysta, including that Resysta NA is no longer in operation and will not fulfill orders, and attempting to divert business to Novano, all in violation of the consultant and employment agreements by and between Resysta and Mr. Sloup.

90. On March 31, 2026, Resysta GmbH wrote again to Mr. Sloup, demanding that he comply with the agreements and provide the requested log-in information and telling Mr. Sloup that Resysta was aware that Mr. Sloup had been making unauthorized modifications to the Resysta NA website many weeks after his termination. *See* Ex. J.

91. In late April of 2026, Resysta was able to shut off Mr. Sloup's access to www.resystausa.com with the assistance of the domain registrar.

92. Notwithstanding his termination from Resysta, and after Mr. Sloup was rightfully cut-off from accessing Resysta's primary domain and website, upon information and belief, Mr. Sloup has registered multiple additional domain names in an effort to interfere with Resysta's business, including, but not limited to, www.resysta-usa.com and www.resystainfo.com.

93. Not only has Mr. Sloup attempted to improperly utilize those domains, counsel purporting to act on behalf of Mr. Sloup "and his German limited liability company, JS Consulting UG," has affirmatively requested the transfer of www.resystausa.com back to Mr. Sloup. Additionally, in late April 2026, Mr. Sloup contacted the domain registrar, Ionos, to baselessly contest the transfer of Resysta's IP back to Resysta, showing Mr. Sloup's intent to continue to harm Resysta.

94. Mr. Sloup has also continued to use Resysta's intellectual property and proprietary and trade secret information to unfairly compete with Resysta, including on behalf of Novano.

95. Upon information and belief, Mr. Sloup, individually and/or on behalf of one or more of the Defendants, continues to solicit Resysta customers, suppliers, and manufacturers that he learned of through his employment with Resysta, in an attempt to divert business away from Resysta and toward Novano. Mr. Sloup has disseminated false and untrue information about Resysta in an attempt to harm Resysta for purposes of his own gain.

96. The Defendants used and continue to use photographs of Resysta installation and jobs on the Novano webpage and Novano advertisements to falsely advertise that such installations and jobs were performed by Novano, as shown in the mere examples below.

| **Resysta** | **Novano** |
|---|---|
|  https://resystausa.com/portfolio/exclusive-private-residence-in-los-angeles/ |  https://novanobuildingproducts.com/en-us/exclusive-residence-los-angeles/ |

| | |
|---|---|
|  https://resystausa.com/portfolio/exclusive-private-residence-in-los-angeles/ |  https://novanobuildingproducts.com/en-us/exclusive-residence-los-angeles/ |
|  https://resystausa.com/portfolio/exclusive-private-residence-in-los-angeles/ |  https://novanobuildingproducts.com/en-us/exclusive-residence-los-angeles/ |
|  https://resystausa.com/portfolio/exclusive-private-residence-in-los-angeles/ |  https://novanobuildingproducts.com/en-us/exclusive-residence-los-angeles/ |

| | |
|---|---|
|  |  |
| https://resystausa.com/portfolio/exclusive-private-residence-in-los-angeles/ | https://novanobuildingproducts.com/en-us/exclusive-residence-los-angeles/ |
|  |  |
| https://resystausa.com/wp-content/uploads/2026/01/Resysta-USA-Fence-Installation-Guide-070126.pdf | https://novanobuildingproducts.com/en-us/gallery/ |
|  |  |
| https://resystausa.com/wp-content/uploads/2026/01/Resysta-USA-Fence-Installation-Guide-070126.pdf | https://novanobuildingproducts.com/en-us/gallery/ |

| | |
|---|---|
|  https://resystausa.com/portfolio/metlife-symphony-tower-llc/ |  https://novanobuildingproducts.com/en-us/symphony-tower-san-diego/ |
|  https://resystausa.com/portfolio/metlife-symphony-tower-llc/ |  https://novanobuildingproducts.com/en-us/symphony-tower-san-diego/ |
|  https://resystausa.com/portfolio/metlife-symphony-tower-llc/ |  https://novanobuildingproducts.com/en-us/symphony-tower-san-diego/ |



https://resystausa.com/portfolio/metlife-symphony-tower-llc/



https://novanobuildingproducts.com/en-us/symphony-tower-san-diego/



https://resystausa.com/portfolio/avoin-complex/




https://novanobuildingproducts.com/en-us/



https://resystausa.com/portfolio/timbers-kiawah-resort/



https://novanobuildingproducts.com/en-us/gallery/

| | |
|---|---|
|  https://resystausa.com/portfolio/decking-in-san-diego/ |  https://novanobuildingproducts.com/en-us |

97. Upon information and belief, the Defendants claimed and continue to claim that prior Resysta installations and jobs were performed by Novano, falsely attributing Resysta's work to Novano, even though Novano has not actually completed any installations of its products.

98. Upon information and belief, Mr. Sloup, Novano, Voss Solid USA and/or All Green are using Resysta confidential and trade secret information to make, use, and/or sell products using Resysta's proprietary building material composite and unfairly compete with Resysta.

99. Resysta's trade secrets, including its proprietary product information, price lists, customer lists, distributor lists, and other sensitive business information, are not known to the public and provide various advantages and value to Resysta. Resysta has maintained the secrecy of these trade secrets via the use of non-disclosure agreements, access controls, password protections, confidentiality policies, and other similar measures.

100. Mr. Sloup has, via his prior position as President of Resysta NA, misappropriated Resysta's trade secrets for his benefit and the benefit of his companies, including Novano.

101. Additionally, Resysta maintains strong federal and common law trademark rights to the Resysta® mark which at least Mr. Sloup and Novano are infringing and misappropriating.

102. At considerable expense, and through a substantial commitment of time and energy, Resysta has developed a high degree of consumer recognition and goodwill in its Resysta® mark. Adopted in 2008, and used continuously and consistently since then, the Resysta® mark is recognized by consumers as exclusively identifying goods and services emanating from Resysta.

103. To protect its substantial investment in its Resysta® marks, Resysta and its related companies own trademark registrations for the Resysta® mark, including U.S. Trademark Registration No. 4,208,235, which was registered by Patenta, a wholly owned subsidiary of Resysta GmbH, on the Principal Register on September 18, 2012, for, among other things, "Plastics in extruded form for use in manufacture of profiles; plastic substances (semi-processed), namely, polyvinyl chloride and polyvinyl chloride composite with natural fibers" in International Class 17 and "Retail store services featuring the goods of classes 17 and 20, namely, plastics in extruded form for use in manufacture, plastic substances (semi-processed), namely, polyvinyl chloride and polyvinyl chloride composite with natural fibers, building materials, namely, profiles consisting of non-metallic hybrid materials, predominantly of plastic substances, building materials consisting of non-metallic hybrid materials, predominantly of plastic substances, veneer consisting of non-metallic hybrid materials, predominantly of plastic substances, furniture, mirrors, picture frames, goods of materials consisting of non-metallic hybrid materials, predominantly of plastic substances, namely, furniture, mirrors, picture frames" in Class 35. A true and correct copy of the Registration Certificate for the Resysta® mark is attached hereto as Exhibit K. This registration remains valid and subsisting, and it has become incontestable under 15 U.S.C. § 1065.

104. Novano and/or one or more of the other Defendants have offered for sale, sold, and advertised, and continue to offer for sale, sell, and advertise, plastics in extruded form and composites with natural fibers, as well as retail store services for the same, in the United States under the Resysta® trademark without permission or consent from Resysta (including Patenta, Resysta GmbH's wholly owned subsidiary and the current owner of the trademark). Notwithstanding their awareness of Resysta's rights in the Resysta® trademark, and in fact by reason of same, Novano and/or one or more of the other Defendants has knowingly offered for sale and/or sold in United States, including within this district, identical goods and services under the Resysta® mark.

105. Novano's and/or the other Defendants' actions alleged herein are willful, deliberate, and intended to, and are likely to, cause confusion, mistake, or deception among consumers, and to cause them to falsely believe that their goods and services are authorized, sponsored, or approved by Resysta or are otherwise associated, affiliated, or connected with Resysta.

106. By virtue of the acts complained of herein, Novano and/or one or more of the other Defendants has created a likelihood of injury to Resysta's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Resysta's goods and services with Novano's and/or one or more of the Defendants goods and services, and has otherwise competed unfairly with Resysta by unlawfully trading on and using Resysta's Resysta® mark without Resysta's permission or consent.

107. Novano's and/or one or more of the other Defendant's acts complained of herein have caused and will continue to cause irreparable harm to Resysta and to the substantial goodwill embodied in the Resysta® trademark, and said acts will continue unless and until Novano and/or one or more of the other Defendants is preliminarily and permanently enjoined from the wrongful acts complained of herein.

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT, CONSULTING AGREEMENT**

**(Mr. Sloup)**

108. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

109. On July 5, 2011, Resysta NA and Mr. Sloup entered into the Consulting Agreement.

110. The Consulting Agreement is a valid, binding, and legally enforceable written agreement between the parties.

111. At all relevant times, Resysta NA materially complied with the terms of the Consulting Agreement and otherwise performed in accordance with the Consulting Agreement.

112. As part of the Consulting Agreement, Mr. Sloup agreed to irrevocably assign all intellectual property, work product, know-how, processes, designs, trade secrets, and other rights which related to Mr. Sloup's services under the Consulting Agreement to Resysta.

113. However, upon his termination by Resysta, Mr. Sloup continued to use such intellectual property, work product, know-how, trade secrets, and other rights of Resysta to the benefit of himself and his competing company, Novano.

114. Mr. Sloup therefore breached the Consulting Agreement.

115. Mr. Sloup's breach has caused significant and irreparable harm to Resysta because Resysta has had to compete against its own propriety information, intellectual property, and trade secrets.

116. As a result of Mr. Sloup's breaches of the Consulting Agreement, Resysta is entitled to compensatory damages in an amount to be proven at trial.

117. As a result of Mr. Sloup's breaches of the Consulting Agreement, Resysta is also entitled to injunctive relief to prevent the further improper use and

disclosure of Resysta's proprietary information, intellectual property, and trade secrets.

**SECOND CAUSE OF ACTION**

**BREACH OF CONTRACT, EMPLOYMENT AGREEMENT**

**(Mr. Sloup)**

118. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

119. On February 1, 2012, Resysta NA and Mr. Sloup entered into the Employment Agreement.

120. The Employment Agreement is a valid, binding, and legally enforceable written agreement between the parties.

121. At all relevant times, Resysta NA materially complied with the terms of the Employment Agreement and otherwise performed in accordance with the Employment Agreement.

122. As part of the Employment Agreement, Mr. Sloup agreed that "[a]ll plan, designs, drawings, formula, correspondence, specifications, price lists, lists of customers and suppliers, and all other documents, papers and property" in his possession relating to the business of Resysta "shall be deemed to be the property of [Resysta NA] and shall … be delivered up by [Mr. Sloup] to [Resysta NA] immediately upon the termination … of the Employment…."

123. However, upon his termination by Resysta, Mr. Sloup did not turn over any documents, papers, log-ins, or property, including access to the Resysta NA website, www.resystausa.com and other proprietary information, trade secrets, copyrights, and the like.

124. Mr. Sloup therefore breached the Employment Agreement.

125. Mr. Sloup's breach has caused significant and irreparable harm to Resysta because such information is being used to unfairly compete with Resysta, and Resysta also had to fight to regain access to its website and control of its related

email system, via which Mr. Sloup diverted customer email from Resysta to himself and/or his related companies.

126. As a result of Mr. Sloup's breaches of the Employment Agreement, Resysta is entitled to compensatory damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**BREACH OF CONTRACT, ADDITIONAL AGREEMENT**

**(Mr. Sloup)**

127. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

128. On September 23, 2016, Resysta GmbH and Mr. Sloup entered into the Additional Agreement.

129. The Additional Agreement is a valid, binding, and legally enforceable written agreement between the parties.

130. At all relevant times, Resysta GmbH materially complied with the terms of the Additional Agreement and otherwise performed in accordance with the Additional Agreement.

131. As part of the Additional Agreement, Mr. Sloup confirmed in Section 1.1 and 1.2 that all IP rights in technology, products, and work results created for or related to Resysta belong exclusively to the Resysta, and in Section 1.3 that Mr. Sloup would "perform at any time any such acts ... as required" to accomplish the transfer of such IP rights.

132. However, upon his termination by Resysta, Mr. Sloup continued to use the IP and other rights of Resysta to the benefit of his competing companies, including Novano.

133. Mr. Sloup therefore breached the Additional Agreement.

134. Mr. Sloup's breach has caused significant and irreparable harm to Resysta because Resysta has had to compete against its own propriety information and IP.

135. As a result of Mr. Sloup's breaches of the Additional Agreement, Resysta is entitled to compensatory damages in an amount to be proven at trial.

136. As a result of Mr. Sloup's breaches of the Additional Agreement, Resysta is also entitled to injunctive relief to prevent the further improper use and disclosure of Resysta's proprietary information and IP.

**FOURTH CAUSE OF ACTION**

**<u>COMPUTER FRAUD, 18 U.S.C. § 1030 AND CAL. PENAL CODE § 502</u>**

**(Mr. Sloup, Novano)**

137. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

138. Through his actions, Mr. Sloup knowingly caused the transmission of a program, information, code, or command designed to modify www.resystausa.com.

139. As a result of such conduct, Mr. Sloup intentionally caused damage without authorization to protected computers, meaning those used in or affecting interstate or foreign commerce or communication, where damage is any impairment to the integrity or availability of data, a program, a system, or information.

140. That damage has included financial loss substantially exceeding $5,000.

141. Mr. Sloup also—knowingly and without permission—accessed and damaged or destroyed data with the intent to wrongfully control it, including wiping the contents of his Resysta-issued laptop before providing it back to Resysta following his termination, thus erasing all information relating to Resysta NA's operating documents, lists of accounts, lists of vendors, and much other key operating and proprietary information.

142. Mr. Sloup's misconduct has caused, and continues to cause, significant and irreparable harm to Resysta.

143. Resysta is entitled to actual damages and injunctive relief. Under California Penal Code Section 502(e), Resysta is additionally entitled to reasonable attorneys' fees and punitive damages, because Mr. Sloup has been guilty of oppression, fraud, and malice within the meaning of California Civil Code Section 3294. As shown by Mr. Sloup's ongoing pattern of misconduct toward Resysta, he acted with intent to injure Resysta, and has engaged in despicable conduct that has subjected Resysta to cruel and unjust hardship in conscious disregard of Resysta's rights, including hijacking the Resysta NA website to satisfy his personal vendetta and for competitive advantage.

**FIFTH CAUSE OF ACTION**

**CYBERSQUATTING, 15 U.S.C. § 1125(d)**

**(Mr. Sloup, Novano)**

144. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

145. The Anticybersquatting Consumer Protection Act ("ACPA") provides that a "person shall be liable in a civil action by the owner of a mark" if that person "(i) has a bad faith intent to profit from that mark," and "(ii) registers, traffics in, or uses a domain name" that "in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark." 15 U.S.C. § 1125(d).

146. Upon information and belief, Mr. Sloup and/or Novano have registered and/or used numerous domains that are identical and confusingly similar to Resysta's Resysta® mark, including but not limited to www.resysta-usa.com, www.resystausa.com, www.novano-resysta.de, and www.naxan-resysta.com, with a bad faith intent to profit from their use of the Resysta® mark without authorization.

147. The Resysta mark is inherently distinctive, and was inherently distinctive at the time of registration of the domains, including because it was

adopted in 2008 before any of the domains, and it is fanciful or suggestive and recognized by consumers as an identifier for the Resysta brand.

148. Upon information and belief, Mr. Sloup and/or Novano have registered, used, and/or trafficked in the foregoing domains, and have done so with a bad-faith intent to profit from the Resysta mark at least because they own no trademark or intellectual property rights in the Resysta® mark or domain, have no bona fide noncommercial or fair use of the Resysta® mark, and have tried "to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." 15 U.S.C. § 1125(d)(B)(i).

149. Mr. Sloup and/or Novano's activities described herein have caused, and continue to cause, significant and irreparable harm to Resysta.

150. Under the ACPA, Resysta is entitled to a court order that Mr. Sloup and/or Novano permanently transfer the domains, as well as any other appropriate injunctive relief. Resysta is also entitled to up to three times its actual damages or statutory damages of $1,000 to $100,000 per domain name; costs; and attorneys' fees.

## SIXTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

**(Mr. Sloup)**

151. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

152. Mr. Sloup, as the President of Resysta NA, owed fiduciary duties of loyalty and care to Resysta NA.

153. Mr. Sloup was thus under an obligation to not usurp or misappropriate company opportunities for his own personal gain or the gain of his owned companies

or entities under his control or influence, such as Novano, All Green, and/or Sustain Built.

154. Mr. Sloup, as a director of Resysta NA, was also required to adhere to the provisions of the Stockholder Agreement.

155. Mr. Sloup breached his fiduciary duties to Resysta NA by, among other things, self-dealing with All Green, Sustain Built, and Novano, usurping Resysta NA's business opportunities, misappropriating Resysta NA's confidential information, intellectual property, trade secrets, goodwill, and the like, and by not adhering to the provisions of at least the Stockholder Agreement.

156. Mr. Sloup's breaches of his fiduciary duties resulted in a significant injury to Resysta NA and a benefit to Mr. Sloup and/or his related companies.

157. Mr. Sloup's breaches of his fiduciary duties were intentional and in bad faith and therefore entitle Resysta to an award for exemplary and punitive damages.

**SEVENTH CAUSE OF ACTION**

**COPYRIGHT INFRINGEMENT, 17 U.S.C. § 501**

**(All Defendants)**

158. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

159. Resysta GmbH owns all pertinent rights to the copyrights in the images of its building products as set forth above.

160. Defendants have copied, displayed, and distributed the expressions fixed in the Resysta GmbH images and made derivatives of those expressions without Resysta GmbH's authorization in violation of 17 U.S.C. § 501.

161. Defendants' acts were willful.

162. The harm caused to Resysta GmbH is irreparable, and unless restrained or enjoined, Defendants will continue to commit such acts. Resysta GmbH's remedies at law are not adequate to compensate them for these inflicted and

threatened injuries, entitling Resysta GmbH to equitable remedies, including injunctive relief.

163. As a result of Defendants' acts, they are required to pay Resysta GmbH its actual damages and their profits attributable to the infringement, or statutory damages as provided in 17 U.S.C. § 504.

**EIGHTH CAUSE OF ACTION**

**TRADEMARK INFRINGEMENT, 15 U.S.C. § 1125(a)**

**(Mr. Sloup, Novano, Ms. Morales, All Green)**

164. Resysta incorporates by reference each and every allegation contained above (and in the Cause of Action against All Green for breach of the Distributor Agreement described below) as if set forth herein.

165. As a result of the widespread use and promotion of the Resysta® Mark, the mark has become well-known to consumers and potential consumers, and consumers and potential consumers have come to associate the Resysta® Mark with alternative building materials and retail sales of the same.

166. Resysta's substantial use of the Resysta® Mark in commerce has also resulted in the Resysta® Mark being protectable and enforceable. Resysta owns all rights, title, and interest in and to the Resysta® Mark, including all common law rights in such mark.

167. Mr. Sloup, Novano and All Green have infringed the Resysta® Mark and created a false designation of origin, by using in commerce, without Resysta's permission, the Resysta mark and Resysta-inclusive marks, which are identical and/or confusingly similar to the Resysta® Mark, in connection with the advertisement, offering for sale, and/or sale of Novano's products and services.

168. Mr. Sloup's, Novano's and All Green's actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association with Resysta, and/or as to the origin, sponsorship, or approval of Resysta's goods

and services or Novano's and All Green's commercial activities, in violation of 15 U.S.C. § 1125(a).

169. Mr. Sloup, Novano and/or All Green adopted and used the Resysta-inclusive marks with the intent to trade upon Resysta's reputation and goodwill by causing confusion and mistake among consumers, and to deceive them into believing that Novano's and All Green's goods and services are associated with, sponsored by, or approved by Resysta, when they are not.

170. Mr. Sloup, Novano and All Green had actual knowledge of Resysta's ownership and prior use of the Resysta® Mark and willfully violated 15 U.S.C. § 1125(a).

171. Mr. Sloup, Novano and All Green, by their actions, have irreparably injured Resysta. Such irreparable injury will continue unless Mr. Sloup, Novano and All Green are preliminarily and permanently enjoined by this Court from further violation of Resysta's rights, for which Resysta has no adequate remedy at law. Resysta is also entitled to Mr. Sloup's, Novano's and All Green's profits, Resysta's damages, enhanced damages, the costs of the action, and attorneys' fees given the willful infringement in this case.

## NINTH CAUSE OF ACTION

## TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114

**(Mr. Sloup, Novano, Ms. Morales, All Green)**

172. Resysta incorporates by reference each and every allegation contained above (and in the Cause of Action against All Green for breach of the Distributor Agreement described below) as if set forth herein.

173. Resysta owns a valid and enforceable federally registered trademark for the Resysta® mark, namely, U.S. Registration No. 4,208,235.

174. Mr. Sloup, Novano and All Green have used in commerce, without permission from Resysta, the Resysta® mark and Resysta-inclusive marks that are

confusingly similar to Resysta's registered Resysta® mark in connection with advertising, marketing, and/or promoting Novano's goods and services.

175. Mr. Sloup's, Novano's and All Green's actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association with Resysta, and/or as to the origin, sponsorship, or approval of Novano's and All Green's goods and services or Novano's and All Green's commercial activities, in violation of 15 U.S.C. § 1114.

176. Mr. Sloup, Novano and All Green deliberately and willfully adopted and used the Resysta and Resysta-inclusive marks with the intent to trade upon Resysta's reputation and goodwill by causing confusion and mistake among consumers, and to deceive them into believing that Novano's goods and services are associated with, sponsored by, or approved by Resysta, when they are not.

177. Mr. Sloup, Novano, and All Green had actual knowledge of Resysta's ownership and prior use of the Resysta® Mark and willfully violated 15 U.S.C. § 1114.

178. Mr. Sloup, Novano, and All Green, by their actions, have irreparably injured Resysta. Such irreparable injury will continue unless Mr. Sloup, Novano, and All Green are preliminarily and permanently enjoined by this Court from further violation of Resysta's rights, for which Resysta has no adequate remedy at law. Resysta is also entitled to Mr. Sloup's, Novano's, and All Green's profits, Resysta's damages, enhanced damages, the costs of the action, and attorneys' fees given the willful infringement in this case.

**TENTH CAUSE OF ACTION**

**CALIFORNIA UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE §§ 17200 *et seq.***

**(Mr. Sloup, Novano, Ms. Morales, All Green)**

179. Resysta incorporates by reference each and every allegation contained above (and in the Cause of Action against All Green for breach of the Distributor Agreement described below) as if set forth herein.

180. This is a claim for unfair competition under California Business & Professions Code §§ 17200, *et seq.*

181. By virtue of the acts complained of herein, Mr. Sloup, Novano, and All Green have intentionally caused a likelihood of confusion among consumers and the public and has unfairly competed in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

182. Mr. Sloup's, Novano's, and All Green's acts complained of herein constitute trademark infringement, unfair competition, and unlawful, unfair, malicious or fraudulent business practices, which have irreparably injured Resysta. Such irreparable injury will continue unless Mr. Sloup, Novano and All Green are preliminarily and permanently enjoined by this Court from further violation of Resysta's rights, for which Resysta has no adequate remedy at law.

183. Given the fraud and intentional misleading conduct by Mr. Sloup, Novano, and All Green, Resysta is also entitled to damages to compensate it for Mr. Sloup's, Novano's, and All Green's unfair competition.

**ELEVENTH CAUSE OF ACTION**

**CALIFORNIA COMMON LAW UNFAIR COMPETITION**

**(Mr. Sloup, Novano, Ms. Morales, All Green)**

184. Resysta incorporates by reference each and every allegation contained above (and in the Cause of Action against All Green for breach of the Distributor Agreement described below) as if set forth herein.

185. This is a claim for unfair competition under the common law of the State of California.

186. Mr. Sloup's, Novano's, and All Green's acts complained of herein constitute trademark infringement and unfair competition under the common law of the State of California.

187. By virtue of the acts complained of herein, Mr. Sloup, Novano and All Green have willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with Resysta in violation of the common law of the State of California.

188. Mr. Sloup, Novano, and All Green have irreparably injured Resysta. Such irreparable injury will continue unless Mr. Sloup, Novano, and All Green are preliminarily and permanently enjoined by this Court from further violation of Resysta's rights, for which Resysta has no adequate remedy at law.

189. Given the fraud and intentional misleading conduct by Mr. Sloup, Novano, and All Green, Resysta is also entitled to damages to compensate it for Mr. Sloup's, Novano's, and All Green's unfair competition.

**TWELFTH CAUSE OF ACTION**

**MISAPPROPRIATION OF TRADE SECRETS, 18 U.S.C. §§ 1836 *et seq.***

**(All Defendants)**

190. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

191. Plaintiffs' trade secrets, including but not limited to, vendor, distributor, and customer contact information, quotes, pricing, booking and sales data, guidelines and quality procedures, approval and shipping procedures, marketing channels, delivery performance, profit margins, territories, purchase order data, proprietary product composition and manufacturing information, and other trade secret business information used by Plaintiffs to solicit and provide services to

customers, constitute trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836.

192. Plaintiffs' trade secrets are valuable because they are not generally known or readily accessible, through proper means, to others who can profit from use of the trade secrets.

193. The Defendants' wrongful conduct constitutes an actual and threatened misappropriation and misuse of Plaintiffs' trade secret information in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836.

194. The Defendants' actions, with respect to Plaintiffs' trade secrets, as alleged above, constituted a deliberate scheme and plan to deprive Plaintiffs of the benefits of Plaintiffs' own substantial investment and efforts and steal the fruits of decades of Plaintiffs' labor.

195. As a proximate result of the Defendants' actions as alleged above Plaintiffs to date have suffered, and will continue to suffer, actual damages, including, but not limited to, loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be proven at trial.

196. As a proximate result of the actions alleged above, Plaintiffs will continue to suffer actual damages in an amount to be proven at trial unless the Defendants are enjoined.

197. Plaintiffs have no adequate remedy at law for these injuries unless and until Defendants are restrained from using Plaintiffs' misappropriated trade secrets in the future and ordered to return such information and property to Plaintiffs, because calculations of damages will be difficult, and Plaintiffs will be compelled to bring multiple suits to protect their interests every time that their trade secrets and confidential information are misused or improperly disclosed.

## THIRTEENTH CAUSE OF ACTION

## <u>MISAPPROPRIATION OF TRADE SECRETS, CAL. CIVIL CODE §§ 3426 *et seq.*</u>

**(All Defendants)**

198. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

199. Plaintiffs' trade secrets, including but not limited to, vendor, distributor, and customer contact information, quotes, pricing, booking and sales data, guidelines and quality procedures, approval and shipping procedures, marketing channels, delivery performance, profit margins, territories, purchase order data, proprietary product composition and manufacturing information, and other trade secret business information used by Plaintiffs to solicit and provide services to customers, constitute trade secrets under the California Uniform Trade Secrets Act, Cal. Civil Code § 3426.

200. Plaintiffs' trade secrets are valuable because they are not generally known or readily accessible, through proper means, to others who can profit from use of the trade secrets.

201. The Defendants' wrongful conduct constitutes an actual and threatened misappropriation and misuse of Plaintiffs' trade secret information in violation of the California Uniform Trade Secrets Act.

202. The Defendants' actions with respect to Plaintiffs' trade secrets, as alleged above, constituted a deliberate scheme and plan to deprive Plaintiffs of the benefits of Plaintiffs' own substantial investment and efforts and steal the fruits of decades of Plaintiffs' labor.

203. As a proximate result of the Defendants' actions as alleged above, Plaintiffs to date have suffered, and will continue to suffer, actual damages, including, but not limited to, loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be proven at trial.

204. As a proximate result of the actions alleged above, Plaintiffs will continue to suffer actual damages in an amount to be proven at trial unless the Defendants are enjoined.

205. Plaintiffs have no adequate remedy at law for these injuries unless and until Defendants are restrained from using Plaintiffs' misappropriated trade secrets in the future and ordered to return such information and property to Plaintiffs, because calculations of damages will be difficult, and Plaintiffs will be compelled to bring multiple suits to protect their interests every time that their trade secrets and confidential information are misused or improperly disclosed.

**FOURTEENTH CAUSE OF ACTION**

**BREACH OF CONTRACT, DISTRIBUTOR AGREEMENT – SUSTAIN BUILT**

**(Sustain Built)**

206. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

207. On July 3, 2011, Resysta NA and Sustain Built entered into the Distributor Agreement.

208. The Distributor Agreement is a valid, binding, and legally enforceable written agreement between the parties.

209. At all relevant times, Resysta NA materially complied with the terms of the Distributor Agreement and otherwise performed in accordance with the Distributor Agreement.

210. Sustain Built agreed in the Distributor Agreement to give six-months' notice to terminate the contract.

211. On February 23, 2026, Sustain Built purported to unilaterally terminate the Distribution Agreement with immediate effect.

212. Further, Sustain Built owes approximately $118,523.40 on outstanding invoices.

213. Sustain Built's actions in violation of the Distributor Agreement and failure to pay constitute a breach of the Distributor Agreement by Sustain Built.

214. As a result of Sustain Built's breaches of the Distributor Agreement, Resysta NA is entitled to compensatory damages in an amount to be proven at trial.

**FIFTEENTH CAUSE OF ACTION**

**BREACH OF CONTRACT, DISTRIBUTOR AGREEMENT – ALL GREEN**

**(All Green)**

215. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

216. On September 1, 2017, Resysta NA and All Green entered into the Distributor Agreement.

217. The Distributor Agreement is a valid, binding, and legally enforceable written agreement between the parties.

218. On December 8, 2025, All Green purported to terminate the Distribution Agreement.

219. At all relevant times, Resysta NA materially complied with the terms of the Distributor Agreement and otherwise performed in accordance with the Distributor Agreement.

220. Under § 5(3) of the Distributor Agreement, All Green's right to use Resysta's trademarks existed only during the term of the Distributor Agreement and terminated upon its expiration. Under § 9 of the Distributor Agreement, upon termination, All Green was obligated to: (i) return to Resysta all advertising and promotional materials (§ 9(1)); (ii) offer to Resysta for repurchase all remaining Resysta inventory in its possession (§ 9(2)); and (iii) delete the word "Resysta" from its company name without delay (§ 9(6)). Under § 8(1), All Green was separately obligated to change its company name to remove any reference to Resysta or its Materials.

221. Despite termination of the Distributor Agreement, All Green continued to: (a) Display Resysta's trademarks, logos, certificates, and technical product descriptions on its website and marketing materials without authorization in violation of at least § 5(3) of the Distributor Agreement; (b) advertise Resysta products for sale without authorization and without the prior written approval required by at least § 4 of the Distributor Agreement; (c) retain physical possession of Resysta inventory in its warehouse at 4035 Cheyenne Court, rather than offering it to Resysta for repurchase as required by § 9(2), including inventory for which All Green has not paid in the amount of approximately $111,693.01 as acknowledged by Mr. Sloup in writing on or about February 12, 2026 and in a February 13, 2026 email; (d) refused to pay for inventory it received and continues to hold, despite Mr. Sloup's personal representations regarding a commitment to pay by February 20, 2026, and despite further written demand to All Green on March 13, 2026, notwithstanding that failure to pay constitutes a material breach under § 8(2) of the Distributor Agreement; (e) retain all advertising and promotional materials in violation of § 9(1); and (f) use the name "Resysta" in its business operations, including operating under the alias "Resysta Southwest Distribution LLC," in violation of at least §§ 1(4), 8(1), and 9(6), despite having acknowledged its post-termination obligations in its own December 8, 2025 termination letter.

222. Further, All Green owes approximately $111,693.01 in outstanding invoices.

223. All Green's actions in violation of the Distributor Agreement and failure to pay constitute a breach of the Distributor Agreement by All Green.

224. As a result of All Green's breaches of the Distributor Agreement, Resysta NA is entitled to compensatory damages in an amount to be proven at trial.

**SIXTEENTH CAUSE OF ACTION**

**FRAUD**

**(Mr. Sloup, Ms. Morales, All Green)**

225. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

226. Resysta and All Green entered into a sublease agreement for premises at 4035 Cheyenne Court, Chino, California 91710 (the “Sublease Agreement”).

227. Mr. Sloup negotiated the Sublease Agreement with All Green.

228. Mr. Sloup, on behalf on All Green, and with Ms. Morales, negotiated against himself as the representative of Resysta NA.

229. Resysta requested a copy of the master lease from Mr. Sloup multiple times, but Mr. Sloup did not provide the master lease. Resysta did not obtain a copy of the master lease until March 2026.

230. Resysta first learned in March 2026 that Sublessor All Green was not in fact the lessee of the Master Lease for the premises.

231. Mr. Sloup is not only the 60% owner of All Green, but on information and belief, Mr. Sloup is also an owner of ZOMI Real Estate, LLC, which on information and belief is the owner of the premises.

232. The rent under the Sublease Agreement increased from $1,878.34 per month in 2016 to $5,100 per month as of January 2025 with Mr. Sloup approving each increase on behalf of both the Sublessor and the Sublessee. No independent evaluation of fair market rent was conducted, no board approval was sought or obtained and no disinterested party reviewed or approved any of these increases.

233. As a direct and proximate result of Defendants’ actions, Resysta is entitled to rescission of the Sublease Agreement and compensatory damages in an amount to be proven at trial.

**SEVENTEENTH CAUSE OF ACTION**

**BREACH OF CONTRACT, SUBLEASE AGREEMENT**

**(Mr. Sloup, Ms. Morales, All Green)**

234. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

235. Resysta and All Green entered into the Sublease Agreement.

236. At all relevant times, Resysta NA materially complied with the terms of the Sublease Agreement and otherwise performed in accordance with the Sublease Agreement.

237. All Green did not perform under the terms of the Sublease Agreement. Examples of material deficiencies in the condition of the premises include a leaking ceiling in the office area, presenting potential mold and electrical hazards and damage to Resysta's property, and a very large structural hole in the second-floor storage area floor, which had been covered only by a box.

238. Resysta placed Mr. Sloup and All Green on notice of material deficiencies in a letter dated March 13, 2026 (attached as Ex. L) requesting a written repair plan within ten business days. All Green did not provide the plan. Under Section 2.2 of the Sublease Agreement, All Green warranted that building systems would be in good operating condition and All Green was obligated to rectify noncompliance promptly after written notice.

239. The Sublease Agreement also purported to lease Resysta "one third" of the premises. Yet at no point did All Green delineate, segregate or deliver a defined premises for Resysta's exclusive use. Resysta was never provided with the distinct, identifiable premises contemplated by the Sublease Agreement.

240. As a direct and proximate result of Defendants' actions, Resysta is entitled to rescission of the Sublease Agreement and compensatory damages in an amount to be proven at trial.

**EIGHTEENTH CAUSE OF ACTION**

**BREACH OF CONTRACT, STOCKHOLDER AGREEMENT**

**(Mr. Sloup, Mr. Zenneck)**

241. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

242. Mr. Sloup and Mr. Zenneck, on behalf of Masz, entered into the Stockholder Agreement with Resysta NA and Resysta GmbH on July 29, 2011.

243. The Stockholder Agreement is a valid, binding, and legally enforceable written agreement between the parties.

244. At all relevant times, Resysta GmbH and Resysta NA materially complied with the terms of the Stockholder Agreement and otherwise performed in accordance with the Stockholder Agreement.

245. Mr. Sloup and Mr. Zenneck have violated the Stockholder Agreement in numerous ways as described herein.

246. Under Section 5.1(b) of the Stockholder Agreement, Resysta NA is prohibited from undertaking certain actions without the prior written consent of the "Majority Stockholder," Resysta GmbH. Mr. Sloup's execution of the Sublease Agreement violated at least the following provisions of the Stockholder Agreement, each of which independently required Majority Stockholder approval: (i) Section 5.1(b)(xii), which requires approval for the conclusion of agreements with the Company's shareholders or affiliated persons or entities; (ii) Section 5.1(b)(xv)(6), which requires approval for entering into lease or tenancy agreements having a term of more than two years; (iii) Section 5.1(b)(xix), which requires approval for entering into agreements with shareholders or entities in which a shareholder holds an interest, directly or indirectly; (iv) Section 5.1(b)(xxiv), which requires approval for any transactions outside the ordinary course of business having an impact of more than $50,000 per annum; and (v) Section 5.1(b)(xiii), which requires approval for granting benefits to the Company's shareholders or affiliated persons or entities.

Mr. Sloup obtained none of these approvals. Mr. Sloup lacked authority to bind Resysta NA to the Sublease Agreement.

247. Both Mr. Sloup and Mr. Zenneck violated the Stockholder Agreement via their actions with respect to Masz.

248. In contravention of Section 3.1 of the Stockholder Agreement, Mr. Sloup and Mr. Zenneck caused the transfer of Resysta NA shares from Masz to themselves individually, and, in the case of Mr. Sloup, further caused the transfer of Resysta NA shares to a third-party under his control. Pursuant to Section 3.1 of the Stockholder Agreement, those transfers are void.

249. In contravention of Sections 4.1, 4.2, and 4.3 of the Stockholder Agreement, Mr. Sloup and Mr. Zenneck failed to deliver written notice to Resysta GmbH of the proposed transfers and to offer Resysta NA and Resysta GmbH their contractually mandated option to purchase the shares prior to any transfer.

250. In contravention of Section 3.5 of the Stockholder Agreement, Mr. Sloup and Mr. Zenneck caused the transfer of ownership or control of Masz without the prior written consent of Resysta GmbH.

251. In contravention of Section 8.2 of the Stockholder Agreement, Mr. Sloup and Mr. Zenneck caused Masz to be dissolved, thus causing Masz to no longer be "validly existing" and in "good standing" as covenanted.

252. Pursuant to Section 3.1 of the Stockholder Agreement, the purported transfers of Resysta NA shares are void.

253. As a further result of Mr. Sloup's and Mr. Zenneck's breaches of the Stockholder Agreement, Resysta is entitled to compensatory damages in an amount to be proven at trial.

## NINETEENTH CAUSE OF ACTION

## FRAUD

## (All Defendants)

254. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

255. Mr. Sloup, during his tenure as President of Resysta NA and continuing after his termination as President, is associated or affiliated with the other Defendants.

256. During and after his tenure as President of Resysta NA, Mr. Sloup and the other Defendants have coordinated to destroy Resysta NA's business, including by creating a competing company (Novano) with the support of Mr. Sloup's other companies (Voss Solid USA, All Green, Sustain Built) and persons beholden to him, including Mr. Zenneck and Ms. Morales.

257. As discussed herein, Mr. Sloup has refused to relinquish control of the assets and information owned by Resysta, misappropriated Resysta's intellectual property, know-how, customer lists, and other business information for his and the other Defendants' benefit, breached his contracts with Resysta, and violated his fiduciary duties to Resysta, all with the support and help of the other Defendants.

258. Defendants have misrepresented to Resysta that they are independent entities and that they intend to comply with their agreements with Resysta NA.

259. Defendants have made these misrepresentations with full knowledge of their falsity.

260. Defendants intended to defraud Resysta, including by endeavoring to usurp Resysta NA's business with a competing business, Novano, which is co-owned by the mastermind Mr. Sloup, used Resysta's copyrights, trademarks, and trade secrets to further his fraudulent competition.

261. Resysta had various agreements with Mr. Sloup and his affiliated companies covering the rights and responsibilities of the parties, including that Mr.

Sloup could not use Resysta's intellectual property after his termination and could not unfairly compete in association with his owned and affiliated companies.

262. As a direct and proximate result of Defendants' actions, Resysta is entitled to compensatory damages in an amount to be proven at trial.

**TWENTIETH CAUSE OF ACTION**

**FALSE ADVERTISING, 15 U.S.C. § 1125(a)**

**(Mr. Sloup, Novano)**

263. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

264. Mr. Sloup and Novano have used both the copyrighted images of Resysta GmbH and the images of Resysta projects to advertise Novano's goods and services on Novano's website.

265. Mr. Sloup and Novano have thus made and continue to make false and/or misleading statements concerning Novano's products, services, capability, and history. These statements constitute false descriptions of fact or false representations of fact as to the nature, characteristics, and qualities of Novano's products and services.

266. Mr. Sloup's and Novano's false and/or misleading advertising are of such a material nature that they have the tendency to deceive a substantial portion of customers, consumers, and members of the building product's market.

267. Resysta has been injured as a result of the false advertising and/or misleading statements both through the direct diversion of sales from Resysta and by the lessening of the goodwill associated with Resysta's products and services.

268. Resysta is entitled to injunctive relief in order to force Mr. Sloup and Novano to cease their false and/or misleading use of Resysta's product images and completed job photographs.

269. Resysta is further entitled to actual damages in an amount to be determined at trial.

## TWENTY-FIRST CAUSE OF ACTION

## <u>CONVERSION</u>

**(Mr. Sloup, Novano)**

270. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

271. Resysta NA has always been the sole owner of the domain www.resystausa.com.

272. Nonetheless, Mr. Sloup, on behalf of himself and Novano, knowingly and intentionally assumed control over and manipulated www.resystausa.com, denying Resysta access to that domain.

273. As a result of Mr. Sloup's unlawful possession and manipulation of the www.resystausa.com domain, Resysta NA has suffered significant and irreparable harm.

274. Resysta is entitled to compensation for the detriment caused by the wrongful conversion, including the value of the property at the time of conversion, plus interest, or an amount sufficient to indemnify for loss, and fair compensation for the time and money expended in trying to regain control of the www.resystausa.com domain.

## TWENTY-SECOND CAUSE OF ACTION

## <u>TRESPASS TO CHATTELS</u>

**(Mr. Sloup, Novano)**

275. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

276. Resysta NA has always been the sole owner of the domain www.resystausa.com.

277. Mr. Sloup, on behalf of himself and Novano, intentionally interfered with Resysta NA's possession and use of the www.resystausa.com domain, including by denying Resysta NA access to and assuming control over the domain

without Resysta NA's consent. Mr. Sloup then manipulated that website and its associated email addresses so that emails would redirect to Mr. Sloup and he could respond to them on behalf of his newly created competitor company, Novano.

278. As a result of Mr. Sloup's unlawful possession and manipulation of the www.resystausa.com domain, Resysta NA has suffered significant and irreparable harm.

279. Resysta is entitled to compensation for the detriment caused by the wrongful interference, including the value of the property at the time of the interference, plus interest, or an amount sufficient to indemnify for loss, and fair compensation for the time and money expended in trying to regain control of the www.resystausa.com domain.

## TWENTY-THIRD CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

**(Mr. Sloup, Novano)**

280. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

281. Resysta has and had on-going relationships with certain customers with whom Mr. Sloup worked during his tenure as President of Resysta NA. Those sources have been valuable sources of business and Resysta reasonably expected those relationships to continue into the future.

282. Mr. Sloup knew or should have known the identity of those business relationships as a result of Mr. Sloup's employment with Resysta NA.

283. Mr. Sloup, on behalf of himself and Novano, willfully and intentionally interfered with those relationships, including by using Resysta NA's proprietary and trade secret customer lists to send marketing and sales emails to Resysta NA customers advertising Novano's competing goods and services.

284. As a direct and proximate result of Defendants' actions, Resysta is entitled to compensatory damages in an amount to be proven at trial.

**TWENTY-FOURTH CAUSE OF ACTION**

**NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**(Mr. Sloup, Novano)**

285. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

286. Resysta has and had on-going relationships with certain customers with whom Mr. Sloup worked during his tenure as President of Resysta NA. Those sources have been valuable sources of business and Resysta reasonably expected those relationships to continue into the future.

287. Mr. Sloup knew or should have known the identity of those business relationships as a result of Mr. Sloup's employment with Resysta NA.

288. Mr. Sloup, on behalf of himself and Novano, negligently interfered with those relationships, including by using Resysta NA's proprietary and trade secret customer lists to send marketing and sales emails to Resysta NA customers advertising Novano's competing goods and services.

289. As a direct and proximate result of Defendants' actions, Resysta is entitled to compensatory damages in an amount to be proven at trial.

**TWENTY-FIFTH CAUSE OF ACTION**

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Mr. Sloup)**

290. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

291. On July 5, 2011, Resysta NA and Mr. Sloup entered into the Consulting Agreement.

292. On February 1, 2012, Resysta NA and Mr. Sloup entered into the Employment Agreement.

293. On September 23, 2016, Resysta GmbH and Mr. Sloup entered into the Additional Agreement.

294. On July 29, 2011, Mr. Sloup (and others) entered into the Stockholder Agreement with Resysta NA and Resysta GmbH.

295. The Consulting Agreement, Employment Agreement, Additional Agreement, and Stockholder Agreement are valid, binding, and legally enforceable written agreements between the parties.

296. At all relevant times, Resysta materially complied with the terms of the Consulting Agreement, Employment Agreement, Additional Agreement, and Stockholder Agreement, and otherwise performed in accordance with those agreements.

297. Each of the Consulting Agreement, Employment Agreement, Additional Agreement, and Stockholder Agreement contain an implied covenant of good faith and fair dealing.

298. Mr. Sloup breached the implied covenant of good faith and fair dealing by engaging in bad faith conduct that unfairly frustrated Resysta NA's and Resysta GmbH's rights to receive the benefits of the agreements, including by Mr. Sloup conduct in self-dealing, starting a competing company (Novano) while still acting as the President of Resysta NA, improperly using Resysta's intellectual property and confidential information to form a competing company, and concealing the nature of the Masz entity and its apparent dissolution from Resysta to the benefit of himself and his related companies and co-conspirators.

299. Mr. Sloup's conduct was not undertaken in good faith, but instead was designed to obtain the benefits of the Consulting Agreement, Employment Agreement, Additional Agreement, and Stockholder Agreement while avoiding their correspondent obligations.

300. As a result of Mr. Sloup's breaches of the implied covenant of good faith and fair dealing, Resysta is entitled to compensatory damages in an amount to be proven at trial.

**TWENTY-SIXTH CAUSE OF ACTION**

**CIVIL CONSPIRACY**

**(All Defendants)**

301. Resysta incorporates by reference each and every allegation contained above as if set forth herein.

302. Defendants Mr. Sloup, Novano, Voss Solid USA, Ms. Morales, All Green, Mr. Zenneck, and Sustain Built formed a conspiracy and/or acted in concert with the common purpose and design of creating a competing business to Resysta, diverting clients from Resysta, and improperly using Resysta's intellectual property and confidential information to compete with Resysta, including its trade secrets, copyrights, trademarks, websites, and social media.

303. The conspiracy was formed and executed in furtherance of Mr. Sloup's breaches of contract and breach of fiduciary duty to Resysta NA and Resysta GmbH.

304. In furtherance of the conspiracy, one or more of the Defendants committed the following overt acts: (1) forming and operating a competing company in violation of the various contracts and fiduciary duties of Mr. Sloup; (2) copying copyright-protected images from the Resysta website for use on the Novano website; (3) maintaining illegal access to Resysta NA's website and email systems; (4) ceasing payments admittedly owed to Resysta NA; (5) unilaterally terminating contracts with Resysta NA without cause and against the terms of the contracts; (6) using Resysta's intellectual property, including its confidential and trade secret information, for the benefit of the conspirators and their associated companies.

305. As a direct and proximate result of the conspiracy, Resysta is entitled to compensatory and punitive damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Resysta respectfully prays for the following relief:

A. Judgment in Plaintiffs' favor;

B. Injunctive relief, including a temporary restraining order, ordering Mr. Sloup, Novano, Voss Solid USA, Ms. Morales, All Green, Mr. Zenneck, and/or Sustain Built to cease and desist use of Resysta GmbH's copyrighted works;

C. Injunctive relief, including a temporary restraining order, ordering Mr. Sloup, Novano, and/or All Green to cease and desist use of Resysta's trademarks;

D. Injunctive relief, including a temporary restraining order, ordering Mr. Sloup and Novano to cease their false and/or misleading use of Resysta's product images and completed job photographs;

E. Injunctive relief, including a temporary restraining order, ordering Mr. Sloup, Novano, Voss Solid USA, Ms. Morales, All Green, Mr. Zenneck, and/or Sustain Built to cease and desist use of Resysta's trade secrets;

F. Injunctive relief, including a temporary restraining order, ordering Mr. Sloup, Novano, Voss Solid USA, Ms. Morales, All Green, Mr. Zenneck, and/or Sustain Built to cease and desist importing products that use and/or embody Resysta's trade secrets and/or confidential information and the destruction or recall of any such products;

G. Injunctive relief, including a temporary restraining order, ordering Mr. Sloup to return control of any domains and social media accounts incorporating the term "Resysta";

H. An order of rescission of the Sublease Agreement;

I. An order voiding the transfer of Masz's shares in Resysta NA;

J. An award of statutory damages, defendants' profits, compensatory damages, enhanced damages, and punitive damages resulting from Defendants' actions;

K. An award of attorneys' fees and costs incurred in preparing, filing, and prosecuting this action;

L. An award of costs and expenses incurred in preparing, filing, and prosecuting this action;

M. An award of pre-judgment and post-judgment interest at the statutory rate; and

N. Any and all additional relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

**BAKER & HOSTETLER LLP**

Dated: May 3, 2026

*/s/ Kevin W. Kirsch*
Kevin W. Kirsch
Katherine R. McMorrow
Jeffrey L. Lyons (*pro hac vice* application forthcoming)

*Attorneys for Plaintiffs*
RESYSTA NORTH AMERICA, INC., RESYSTA INTERNATIONAL GMBH, and PATENTA ASIA LTD.